## WILLIAM NELSON v. WILLIAM C. GUFFEY.

131 273
23 SC ¹168

131 273
222 ⁶250
222 ⁶251

APPEAL BY DEFENDANT FROM THE COURT OF COMMON
PLEAS NO. 1 OF ALLEGHENY COUNTY, IN EQUITY.

Argued November 6, 1889—Decided January 6, 1890.
[To be reported.]

1. The transfer of a judgment by an exemplification of the record thereof, under § 1, act of April 16, 1840, P. L. 410, is for purposes of lien and execution only, and does not become a judgment, in the common interpretation of the word, of the county to which it has been transferred.

2. It is but record evidence of the existence of the judgment in the county in which it was obtained; the court to which it is transferred has no

power over it, save for purposes of lien and execution, and cannot inquire into its validity or make orders affecting its operation.

3. All inquiries into the effect of the judgment, as establishing the plaintiff's demand, must be made to the court that pronounced it; yet the regularity of the process upon the ancillary judgment must be determined by the court from which such process is issued.

4. The revival of a judgment entered upon such exemplification, as it does not displace the control over the original of the court where it was obtained, confers upon the court of the ancillary judgment no power other than that acquired when the transfer was made.

5. Upon a judgment entered upon such exemplification, or upon a judgment of revival thereof, no testatum fieri facias can issue; and if it be issued, the court whence it proceeds has full power, upon the application of the defendant, to order it to be set aside.

6. Wherefore, there being this plain and adequate remedy at law, it is error in the court of the county to which such testatum fieri facias is directed, to proceed by bill in equity, filed by the defendant, to enjoin the plaintiff from prosecuting its enforcement.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 231 October Term 1889, Sup. Ct.; court below, No. 117 September Term 1888, C. P. in Equity.

On June 20, 1888, a bill in equity was filed by William Nelson against William C. Guffey, in which it was in substance averred:

That on June 6, 1874, William C. Guffey, the defendant, then and now a resident of Westmoreland county, obtained an award of arbitrators against the firm of Blackmore & Nelson, composed of William Nelson, the plaintiff, and James Blackmore, since deceased, which was entered as a judgment at No. 680 June Term 1874, Court of Common Pleas No. 1, for the sum of $9,652.64; that on July 7, 1874, an exemplification of the record of said judgment was filed in the Court of Common Pleas of Westmoreland Co., at No. 388 August Term 1874, and on the same day said defendant caused a writ of fieri facias to be issued thereon and personal property of Blackmore & Nelson, in said Westmoreland county, to be levied upon and advertised for sale; that on August 13, 1874, an injunction issued from the District Court of the United States for the Western District of Pennsylvania, at No. 2036, restraining said defendant from interfering with the property or estate

of said Blackmore & Nelson, and no further proceedings were had on said judgment in Westmoreland county until January 8, 1887, when a writ of scire facias was issued thereon to revive the same, which writ was returned nihil, and afterward, to wit, February 25, 1887, an alias writ of scire facias was issued, which was likewise returned nihil, whereupon, on March 9, 1887, judgment of revival was entered by default for want of appearance, and the sum due liquidated at $12,444.94; that immediately thereafter, upon the filing of the affidavit required by law, a writ of testatum fieri facias was issued upon said revived judgment, directed to the sheriff of Allegheny county, and was then in the hands of that officer for collection from the property of the plaintiff, the estate of said James Blackmore, deceased, being insolvent; and that the plaintiff, having been for many years prior to the entry of the original judgment, and continuously since, a resident of Allegheny county, had no notice of said writs of scire facias, and no opportunity to defend against the same, his first knowledge thereof being the issuance of said testatum fieri facias. The bill averred further, that the original judgment from which said exemplification was taken, had long since been satisfied and discharged; that on or about October 18, 1873, proceedings in involuntary bankruptcy were instituted in said District Court against said firm of Blackmore & Nelson, who were duly adjudicated bankrupts on October 29, 1874; that on February 12, 1879, the plaintiff was regularly discharged as a bankrupt from the payment of all pre-existing debts of the firm of Blackmore & Nelson, the judgment now attempted to be enforced by said William C. Guffey representing one of said pre-existing debts; that the plaintiff believed that the revival of said discharged judgment in Westmoreland county, where no notice could be had by the plaintiff, was a trick and a device, intended to deprive him of an opportunity to plead his discharge in bankruptcy, and thus to secure to the plaintiff an unconscionable advantage in the prosecution of his alleged claim.

So averring, the plaintiff prayed for an injunction directed to said William C. Guffey, the defendant, and the sheriff of Allegheny county, " to restrain them from further proceeding with said writ of testatum fieri facias, and to compel said Wil-

liam C. Guffey to abstain from any and all interference by ex-
ecution, levy, sale, or in any other manner whatsoever, with
the property or estate of your orator, by virtue of or under
any authority of the judgment obtained against him at No. 680
June Term 1874, in the Court of Common Pleas No. 1 of Al-
legheny county, or upon the exemplification thereof entered at
No. 388 August Term 1874, in the Court of Common Pleas of
Westmoreland county."

A bond having been filed, on hearing of plaintiff's motion
after notice thereof, a preliminary injunction was issued and
served; subsequently, an answer having been filed by the de-
fendant, setting up the grounds of defence sufficiently appear-
ing in the opinion of the court below, the cause was set down
by the plaintiff for hearing upon bill and answer.

On September 3, 1889, after argument, the court, SLAGLE, J.,
filed an opinion, which, after stating the facts shown by the
pleadings, proceeded:

The defence set up in the answer is altogether legal:
(1) that the debt was not discharged, because it was created
by the recovery of judgment on June 6, 1874, after proceed-
ings in bankruptcy were commenced; (2) that if the original
judgment was discharged by the proceedings in bankruptcy,
they did not affect the revived judgment obtained on March 9,
1887, in Westmoreland county; and (3) because said William
Nelson, before the bringing of his bill in this case, had pre-
sented his petition to the court containing substantially the
same averments as the bill, and asking that the judgment at
No. 680 June Term 1874, be opened to permit him to plead
his discharge in bankruptcy, upon which a rule was granted,
and after argument of counsel and consideration by the court,
was discharged.

If the third objection is good it will be unnecessary to con-
sider the first and second. It may therefore be properly dis-
posed of first.

It has been held in a number of cases that " a bill in equity
cannot be maintained to restrain execution upon a judgment at
law, where a rule to show cause, etc., founded on the same
facts, had previously been discharged by the court:" Given's
App., 121 Pa. 260; Gordinier's App., 89 Pa. 528; Frauenthal's

App., 100 Pa. 290. This is simply the application of the principle that a judgment of any court having jurisdiction, is conclusive of the matters adjudicated, as between the parties and privies. But in order to make the judgment conclusive it must appear that the issues are the same, and involve substantially the same state of facts, and that the decision was upon the merits of the case. Such does not appear to be the case here. The bill filed is for the purpose of restraining the plaintiff at No. 680 June Term 1874, from proceeding to execute in this county a testatum fieri facias upon a judgment entered in Westmoreland county upon exemplification from this county, or any execution process upon the judgment in this county. The matter adjudicated by the court upon petition at No. 680 June Term 1874, which is claimed to be a bar, was an application to open the original judgment and permit the defendant to plead the discharge in bankruptcy. It is very clear that these are not the same issues. A state of facts might exist which would justify the restraining of execution, which would not authorize the opening of a judgment. It might be that the court would say, " As there was no fraud, and the judgment was obtained after a legal trial, it cannot be opened," and at the same time say, "if the execution were based upon a judgment within our control we would stay it without hesitation." The court is therefore of opinion that the order of the court at No. 680 June Term 1874, discharging the rule to open the judgment in that case, is not a bar to proceedings in equity to restrain execution for the same debt.

—Considering upon the first question, as to the effect of the discharge upon the original judgment, the cases of Boynton v. Ball, 121 U. S. 457; Wise's App., 99 Pa. 193, the opinion proceeded:

It is clear, therefore, that the plaintiff should not be compelled to pay the debt evidenced by the judgment at No. 680 June Term 1874, unless something has occurred since the discharge in bankruptcy to avoid its effect. This is supposed to be found in the entry of judgment upon the scire facias upon this judgment transferred to Westmoreland county.

The allegation of a fraudulent purpose in issuing the writ in Westmoreland county, where the defendant did not reside, and had no property, instead of issuing upon the judgment in Alle-

gheny county, where he did reside and own property, is denied, and must be accepted as true; but the allegation that the defendant in that case and the plaintiff here, had no notice of the proceedings or knowledge of the judgment until the attempt to enforce a testatum execution is not denied, and the effect as to him is the same, whether so intended or not.

In Dimmock v. Reviere Copper Co., 117 U. S. 559, it was held that "a discharge in bankruptcy is no bar to an action upon a judgment recovered against the bankrupt after his discharge, in a suit commenced before the bankruptcy and pending when the discharge was granted, though founded upon a debt provable against him in bankruptcy." See also Stewart v. Colwell, 24 Pa. 67. But this was because the discharge having been granted before judgment, the defendant had an opportunity and should have availed himself of it on a defence in proper time. This case is more like that of Wise's Appeal, where the judgment was entered upon a warrant of attorney, in which the court held that it should be opened to enable the defendant to avail himself of the benefit of his discharge, which he could not have upon the scire facias.

In this case there is no element of waiver or laches. The judgment was entered upon two nihils, which, though equivalent to service for some purposes, is not actual but only constructive notice; and it appears that as soon as the defendant in that case had knowledge of the judgment, he took action to avoid its effect. He has done nothing recognizing the obligation, nor has he voluntarily omitted to do anything from which such recognition would be presumed. To enforce the claim, would be to compel the payment of a claim from which the plaintiff in this case had been legally discharged, and which had as to him been satisfied in law: This should not be done. Plaintiff is clearly entitled to relief, and the only question is, whether this court can administer relief in the proceeding before it.

It is claimed by defendant in this case, that this court has no power to interfere with a testatum execution from the court of Westmoreland county, and that plaintiff's only remedy, if any, is by application to that court. It is possible that that course was open to him, and that an appeal to that court to restrain the execution would be effective, but he has invoked

the power of this court, and if we have jurisdiction to grant the relief, we should do so.

The prayer of this bill is, among other things, " to compel the said William C. Guffey to abstain from any and all interference by execution, levy, sale, or in any other manner whatsoever, with the property or estate of your orator, by virtue of or under authority of the judgment obtained against him at No. 680 of June Term 1874, in the Court of Common Pleas No. 1 of Allegheny county." This we have the unquestioned power to do: Boynton v. Ball, 121 U. S. 457; Wise's App., 99 Pa. 193; and in the mode adopted here, by bill in equity: Given's App. 121 Pa. 260. But the bill further prays that the same order be made as to the exemplification of said judgment entered at No. 388 August Term 1874, in the Court of Common Pleas of Westmoreland county, and that the said William C. Guffey and the sheriff of Allegheny county be restrained " from further proceedings with said testatum fieri facias." The sheriff is not a party to this suit, and as he is an officer of this court, it would be improper to make any order as to him.

In the case of Given's App., 121 Pa. 265, a judgment had been entered in Common Pleas No. 4 of Philadelphia county, in 1882, upon a warrant of attorney. In 1887, writs of scire facias and alias scire facias had been issued, whereupon the defendant filed her bill in the same court, praying that the judgment bond be declared null and void; that the judgment and scire facias be stricken off; that the defendant in the bill be restrained from further proceedings to obtain a revival thereof, or to issue any writ of execution on the original judgment, and for further relief. The court below dismissed the bill, saying: " We decide that a bill to declare the judgment void, and restrain the execution of it, will not be entertained before the refusal or discharge of a rule to open the judgment." This judgment was reversed, Justice CLARK saying: " The court below, as a court of equity, of course has no power to interfere with the records of the Common Pleas as a court of law. . . . . The first two prayers of bill, therefore, we have no power to grant. If a proper case is presented, however, we may enjoin Kern from proceeding to enforce the judgment, but the injunction in such case would not be addressed to, nor would it operate on, the Court of Common Pleas; it would be addressed

to him, and would in terms prohibit him from resorting to the legal jurisdiction in which his judgment was obtained for the enforcement thereof."

This would seem to justify this court in granting the relief, having properly obtained jurisdiction of the parties; but we would hesitate to exercise the power, even in case of a testatum fieri facias levied upon property in this county, if the judgment had been originally entered in Westmoreland county. We would probably restrain proceedings until an opportunity was afforded for appropriate action in the proper court of that county. But under the circumstances of this case, we do not regard it as a breach of comity to proceed to a final determination of the matter. The original judgment is in this court, and the proceedings in Westmoreland county are ancillary to it, and for the purpose of enforcing its obligations. "It is not then a very judgment of the court to which it has been transferred, but a quasi judgment, and that too only for limited purposes:" Brandt's App., 16 Pa. 343. It remains a judgment of the court in which it was first entered. The act of assembly, therefore, gives no authority to transfer it from the court to which it has been transferred, for the reason that it is not a judgment of that court: Mellon v. Guthrie, 51 Pa. 116. "A judgment that is transferred from one county to another, under the act of April 16, 1840, bears a very strong analogy to a testatum execution. It is transferred only to facilitate its enforcement, but with a right to all the writs of scire facias that may be needed for that purpose. The primary judgment is still the principal one:" King v. Nimick, 34 Pa. 297. It has the same force and effect, so far as concerns execution proceedings in the county to which it was transferred, as if it had been originally entered there: Baker v. King, 2 Gr. 256. The logical conclusion from these cases is, that being transferred for purposes of execution only, a revival of the transferred judgment would merely continue the lien, and would not create a new judgment independent of the original.

But it is argued that the testatum fieri facias has some peculiar sanctity which forbids our interference with its enforcement. It is true that the courts of a county into which a testatum fieri facias is sent, have no power to directly interfere with its execution, but it is not so clear that where a party has

obtained judgment in one county, and voluntarily goes into another by such process, the courts of such county may not interfere in equity to prevent him from unjustly taking the property of a party resident there. But that is not this case. The defendant comes here to enforce payment of a judgment of the court which we are satisfied he has no right to demand, and it certainly should make no difference that he comes here by the way of Westmoreland county. The judgment being still the judgment of this court, we have the right to inquire into the process which emanates from it.

If, as we have held, the revived judgment in Westmoreland county is ancillary to the judgment in this county, the execution thereon must be also. The question may therefore arise as to the validity of such execution. If the transferred judgment cannot be transferred to another county, as held in Mellon v. Guthrie, 51 Pa. 116, it is at least doubtful whether a testatum execution will lie upon such transferred judgment. The act of June 16, 1836, § 76, P. L. 775, authorizes a testatum fieri facias where the defendant "has no real or personal estate in the county where such judgment may be obtained." If the transferred judgment is not a judgment of the county to which it is transferred, as held in Mellon v. Guthrie, it would not come within the provision of the act of 1836. But if the act authorizes a writ of testatum fieri facias upon a transferred judgment, it surely cannot be allowed to come into the county in which the original judgment was obtained. To do so would produce great confusion. It is the duty of the prothonotary, upon receipt of such a writ, to enter the same of record, and thereupon it becomes a lien upon the real estate of the defendant. So there would be two liens for the same debt in the same court. Upon the expiration of one, the other might continue, and the lien of the original debt be continued for ten years without revival. But, further, the writ is then returned to the sheriff for execution. If an execution were issued upon the original judgment, the court in which it was entered would have control of it; but if transferred to another county and a testatum fieri facias returned, we would have the anomaly of a process in the hands of the sheriff of the county, for execution of a judgment of the court of the county over which the court had no control. Such could not have been intended by the legislature and ought not to be recognized by the courts.

The debt for which the judgment was obtained at No. 680 June Term 1874, having been discharged in bankruptcy, and this court appearing to have jurisdiction of the subject-matter and the parties, the injunction will be continued and made perpetual.

A formal decree having been entered restraining William C. Guffey as prayed for in the bill, the defendant took this appeal, specifying that the court erred, (1) in not dismissing the bill at plaintiff's costs ; (2) in decreeing that an injunction issue as prayed for in the bill.

*Mr. T. C. Lazear* (with him *Mr. C. P. Orr*), for the appellant :

The case having been set down for argument on bill and answer, the answer must be taken as true in all particulars, as well as the bill as to all its allegations not denied in the answer: Story's Eq. Pl., § 87 ; Randolph's App., 66 Pa. 178.

1. The first and main question involved in the case is, of course, the effect of the discharge in bankruptcy. The certificate of discharge, by its express terms, affected no debts which were not in existence on October 18, 1873, when the petition for adjudication was filed, and which were provable against the bankrupt's estate. But the original judgment in this case was recovered on June 6, 1874, several months after the petition for adjudication was filed, and, according to Wise's App., 99 Pa. 193, the original debt was merged in the judgment, and the certificate of discharge, subsequently granted, could not be set up as a defence to it.

2. But assuming that the court would be bound by Boynton v. Ball, 121 U. S. 457, yet the distinction is to be observed that the judgment, upon which the testatum fieri facias was issued, was recovered after Nelson had obtained his discharge ; whereas, in the case cited, the judgment was recovered before the discharge was granted. That the judgment of revival was a valid judgment, notwithstanding the want of service of process on Nelson, is conclusively established by the uniform practice of treating a return of two nihils, in a scire facias, as equivalent to an actual service: Chambers v. Carson, 2 Wh. 372; Warder v. Tainter, 4 W. 270; Colley v. Latimer, 5 S.

& R. 211. We claim then that the judgment in question comes directly within the ruling of Dimmock v. Reviere Copper Co., 117 U. S. 559, as a judgment in no wise affected by Nelson's discharge. Stewart v. Colwell, 24 Pa. 67, contains a similar ruling.

3. But whatever may be the effect of Nelson's discharge, as regards the judgment upon which the testatum fieri facias was issued, what power had the Court of Common Pleas of Allegheny county to interfere with it? " Where a judgment is transferred to another county than that in which it was originally obtained, the execution issues directly from the judgment so entered, and it is treated for almost every purpose as a judgment of that court. Of course, the stay of the execution would be there ordered. The judge of a distant county has no power over a testatum fieri facias sent to the sheriff thereof, but if there is error or irregularity in the writ, or the judgment on which it is entered, application must be made to the court or judge of the county in which the judgment was entered, to correct or control the process : " Pearson, P. J., in Commonwealth v. Smith, 4 Phila. 419 ; Baker v. King, 2 Gr. 254 ; Thayer, P. J., in Fallon v. Remington, 10 W. N. 119.

4. Again ; we maintain that the decree of the court below, in this case, should be set aside, for the reason that the same matter was fully heard and determined, in the application to open the original judgment entered to No. 680 June Term 1874, in the same court. The grounds of relief and the relief prayed for were the same, the parties the same, and the matters in controversy the same, and the order discharging the rule in that proceeding is res judicata: Frauenthal's App., 100 Pa. 290 ; Gordinier's App., 89 Pa. 528 ; Given's App., 121 Pa. 260. We fail to discover any difference between these cases and the case in hand, if the court below had jurisdiction to grant the relief at first sought to be obtained. And that it had jurisdiction follows from the ruling in Brandt's App., 16 Pa. 343, followed by Mellon v. Guthrie, 51 Pa. 116, and King v. Nimick, 34 Pa. 297, to the effect that if a transcript of a judgment in one county is entered in another county, in pursuance of the act of 1840, the original judgment still remains the principal judgment, and the judgment on the transcript is a dependent emanation of the original and would fall with it.

5. The position taken, that a testatum fieri facias cannot issue, in the case of a transferred judgment, on any other than the original judgment, will not bear scrutiny when examined in the light of. the act of April 16, 1840, P. L. 410, by virtue of which a judgment may be transferred from one county to another. The act makes no distinction between the original and the transferred judgment, as to the form or kind of exccutions to be issued thereon, but makes them both alike in that respect, as well as in respect to lien and revival. If the scire facias in this case had been duly served, it would hardly be pretended that a testatum fieri facias would not lie on the judgment so recovered equally with the original judgment: Collingwood v. Carson, 2 W. & S. 220; Custer v. Detterer, 3 W. & S. 28; Buehler v. Buffington, 43 Pa. 278.

*Mr. J. O. Petty* (with him *Mr. Kennedy T. Friend*), for the appellee :

The case having been set down for argument on bill and answer, the plaintiff admits the answer to be true in all points, and no other evidence is considered, unless it be matter of record to which the answer refers: Lanning v. Smith, 1 Pars. 17.

1. In Clark v. Rowling, 3 N. Y. 216 (53 Am. Dec. 290), it was held that a discharge in bankruptcy operates upon a judgment obtained against the bankrupt, intermediate the commencement of the proceedings and the granting of the discharge, when the judgment is founded on a debt existing, as in this case, at the time the proceedings were commenced. The same is so held in nearly all the states. A few courts have held, however, that such a judgment was a new debt, and unaffected by the discharge. But Wise's App., 99 Pa. 193, is not an authority for this other ruling; for, in that case, a judgment entered intermediate the petition and discharge, was opened to allow the discharge to be pleaded. In Ball v. Boynton, 105 Ill. 627, the Supreme Court of Illinois made the ruling urged by the defendant here, but on appeal the judgment was reversed on that ground by the Supreme Court of the United States: Boynton v. Ball, 121 U. S. 453. That decision is binding upon the state courts: Mott v. Penna. R. Co., 30 Pa. 9. Our case is not ruled by Dimmock v. Reviere Copper

Co., 117 U. S. 559. In that case as in Stewart v. Colwell, 24 Pa. 67, it was held only that bankruptcy is a matter of defence, and where the defendant has his day in court he must plead this like other defences, or be concluded.

2. But the very ground on which the plaintiff bases his application for relief is, that he has not had his day in court. The judgment of revival in Westmoreland county was had on the return of two nihils, of which the defendant there (plaintiff here) had no actual notice. While such judgment is good if undisputed, it will always be relieved against when the defendant makes prompt application and shows a meritorious defence. Nor is the judgment of revival a new judgment. "It is a common, plain, familiar principle, that a scire facias to revive a judgment, post annum et diem, is but a continuation of the original action, and the execution thereon is an execution on the former judgment:" Irwin v. Nixon, 11 Pa. 419; Grover v. Boon, 124 Pa. 399. This being so, and the defendant not having waived his right to prevent its execution, it is the same judgment as before. Nelson has been guilty of no laches. In Curtis v. Slosson, 6 Pa. 267, where the defendant obtained his discharge in bankruptcy after the entry of judgment against him, it was said: "As the writ of audita querela is not in use with us, what could he do? Certainly, no more than wait till he should be molested by having his subsequently acquired property seised in execution."

3. The Court of Common Pleas of Allegheny county had full power to grant the relief sought in this proceeding. If a proper case is presented, a court of equity may enjoin a plaintiff from proceeding to enforce a judgment at law: Given's App., 121 Pa. 260. Such relief is granted if the collection of the judgment would be unconscionable or inequitable, and the defendant has not had a day in court: Lebanon M. Ins. Co. v. Erb, 16 W. N. 113. Here, the judgment sought to be enforced was paid and satisfied by discharge under the insolvent laws, and a discharge in bankruptcy is a meritorious defence, being neither immoral nor inequitable: Carrington v. Halabird, 17 Conn. 530; Starr v. Heckert, 32 Md. 267. "The courts of one state or country cannot exercise any control or superintending authority over those of another state or country, but they have an undoubted authority to control all persons and

things within their own territorial limits. In such cases, the courts do not pretend to direct or control the foreign courts, but without regard to the situation of the matter in dispute, they consider the equities between the parties, and decree in personam according to these equities, and enforce obedience to their decrees by process in personam:" Story's Eq. J., § 899.

4. But granting, as claimed by defendant, that a court of equity will not restrain the plaintiff in proceedings which have previously been commenced in another court, when that court has full power to grant the equitable relief sought, it does not affect the case at bar; (1) because the equities sought to be enforced, concern proceedings commenced in the Common Pleas of Allegheny county, and the judgment is still the judgment of that court. A transferred judgment remains the judgment of the court in which it was first entered: Mellon v. Guthrie, 51 Pa. 116; King v. Nimick, 34 Pa. 297; Brandt's App., 16 Pa. 343; (2) because the Westmoreland county court had not the power to grant the relief sought; the defendant was bound to apply to the court in which the transferred judgment originated, and not to the court to which it was transferred for the special purposes contemplated in the act: Wilkinson v. Conrad, 10 W. N. 22. Nor does the revival of the judgment affect the matter, for as held in Irwin v. Nixon, 11 Pa. 419, the scire facias to revive is but a continuation of the original action, and the execution thereon is an execution on the original judgment.

5. The matters presented in the plaintiff's bill were not res judicata. A judgment is co-extensive only with the issue upon which it is founded, and conclusive only upon matters necessarily involved and included in that issue: 1 Greenl. Ev., § 528; 1 Stark. Ev., 201; 1 Smith's L. C., 523; Coit v. Tracy, 8 Conn. 268 (20 Am. Dec. 110); Wells, Res Judicata, § 295; Sweet v. Tuttle, 14 N. Y. 469; Tams v. Lewis, 42 Pa. 402; Hibshman v. Dulleban, 4 W. 183; Lentz v. Wallace, 17 Pa. 412; Martin v. Gernandt, 19 Pa. 124. Gordinier's App., 89 Pa. 528, and Frauenthal's App., 100 Pa. 290, were both cases where the matters again sought to be agitated had been considered on their merits, and were within the rule there held. And so Given's App., 121 Pa. 260. In the proceeding by peti-

tion, the Court of Common Pleas had not jurisdiction to administer the relief prayed for, and for that reason our case is not within the rule contended for.

6. Our position that a testatum fieri facias cannot issue, in the case of a transferred judgment, on any other than the original judgment, is sustained by reason and authority. The act of April 16, 1840, P. L. 410, is apparently supplementary to the act of 1836, and intended to provide a more convenient execution in another county than could be had by the writ of testatum fieri facias, which is under the control of the court of the county whence it issues. This view is sustained by Brandt's App., 16 Pa. 343; Baker v. King, 2 Gr. 256; King v. Nimick, 34 Pa. 297. A judgment transferred to another county is not the judgment of that court: Mellon v. Guthrie, 51 Pa. 116. Nor is a testatum execution upon it within the definition by 1 T. & H. Pr., 3d ed., 782: " A writ issued into another county than that in which the judgment is." The object of the act of 1840 was to furnish a remedy " in addition to the remedies now provided by law." Such writ of testatum fieri facias is not an additional remedy.

OPINION, MR. JUSTICE WILLIAMS :

The history of the litigation brought to our attention by the bill and answer in this case may, without offence, be characterized as a remarkable one. In 1873, and for some time prior thereto, Blackmore and Nelson were engaged in business as partners. They owed William C. Guffey for goods sold prior to October 18, 1873, and he obtained judgment in the Common Pleas of Allegheny county, No. 1, on an award of arbitrators, for $9,652.64. Judgment was entered on the award on June 6, 1874. On July 7, 1874, a copy of the record of the judgment so obtained was filed in Westmoreland county, under the provisions of the act of April 16, 1840, P. L. 410, and a writ of fieri facias issued thereon, under which a levy on personal property of Blackmore & Nelson was made. But proceedings in involuntary bankruptcy had been begun against Blackmore & Nelson, by their creditors, on October 18, 1873, and on August 23, 1874, the United States District Court for the Western District of Pennsylvania issued an injunction to the sheriff of Westmoreland, restraining all proceedings under the fieri

facias against the goods of Blackmore & Nelson. They were adjudged bankrupts on October 29th following, and on February 12, 1879, William Nelson obtained his discharge as a bankrupt from all debts in existence on October 18, 1873, when proceedings in bankruptcy were begun. We see no reason to doubt that this discharge was operative upon Mr. Guffey's judgment, and we conclude that he saw none, for it was allowed to sleep for thirteen years. In January, 1887, he caused a scire facias to issue in Westmoreland, and an alias scire facias was issued in February. Both were returned nihil habet, and a judgment was regularly obtained against Nelson on two returns of nihil for $12,444.94. On this judgment a writ of testatum fieri facias was issued to the sheriff of Allegheny county, upon which a levy was made on Nelson's property in that county. Instead of going to Westmoreland county, and moving to set aside the writ and open the judgment by default, Nelson applied to the Court of Common Pleas of Allegheny county, No. 1, in which the judgment had been originally obtained, to open the judgment entered upon the award of arbitrators in 1874. This was refused on June 14, 1887, and on the 20th of the same month this bill was filed. The case was heard on bill and answer, and while an injunction was refused as against the sheriff who held the writ, it was awarded against Guffey, the plaintiff therein, and made perpetual. This decree is the error assigned.

The act of April 16, 1840, P. L. 410, provides "that, in addition to the remedies now provided by law, hereafter any judgments, . . . . may be transferred from the court in which they are entered, to any other District Court or Court of Common Pleas in this commonwealth, by filing of record in said other court a certified copy of the whole record in the case; . . . . . and the case may then be proceeded in, and the judgments and costs collected by executions, bill of discovery, or attachment, as prescribed by the act entitled ' An Act relating to executions, passed the 16th day of June, 1836; ' and, as to lien, revivals, executions, and so forth, it shall have the same force and effect, and no other, as if the judgment had been entered, . . . . . in the same court to which it may be thus transferred."

It will be observed that this act provides a remedy for the collection of a judgment "in addition to the remedies now pro-

vided by law." It does not supersede or displace existing remedies. It has been accordingly held that the judgment entered in the county to which the record is transferred does not become a judgment, in the common interpretation of the word, of the county in which it is entered. It is record evidence of the existence of the judgment in the county where it was obtained: Brandt's App., 16 Pa. 343. The court to which it is transferred has no power over it, except for purposes of execution, and cannot inquire into its validity, or make any order affecting its operation: King v. Nimick, 34 Pa. 297; nor can it be transferred, by means of a full copy of the record, to another county from that in which such derivative judgment has been entered: Mellon v. Guthrie, 51 Pa. 116. The plaintiff cannot have two writs of fieri facias running at the same time. The remedy given by the act of 1840 is additional, but it is not concurrent. So long, therefore, as a writ of fieri facias is outstanding on the original judgment, the plaintiff is not entitled to issue a writ upon the transferred judgment. The court in which the judgment was entered loses none of its jurisdiction or power by the transfer, and, if the original judgment be set aside for any reason, the judgment entered in another county falls with it: Baker v. King, 2 Gr. 254; Brandt's Appeal, supra. It is thus apparent that the proceeding in the county to which the record is transferred is ancillary and dependent. The original power of the court in which the judgment was entered is not restrained or modified in the slightest degree by the transfer, nor by any proceedings based upon the copy of record filed in another county. The transfer is for purposes of lien and execution only, and the judgment, when revived in the county to which it is transferred, does not rise above its source, or confer any other power than that which the filing of the copy of record conferred. For all purposes, except execution, the original judgment continues to be the measure of the plaintiff's demand against the defendant, and the evidence of what has been passed upon by the court. All inquiries into its regularity or effect, and all applications for relief from its operations, must be made to the court that pronounced it. The derivative judgment is the basis of process in the county in which it is entered. The regularity and execution of such process must

be determined by the court that issues it, but its control extends no further than its own process.

We come now to inquire into the power of the courts of Westmoreland county to issue a testatum fieri facias upon the derivative judgment. The power to issue a testatum fieri facias is given by the act of June 16, 1836, P. L. 775. The section, so far as is material, is as follows: "Section 76. If the defendant in any judgment for the recovery of money shall have no real or personal estate in the county where such judgment may be obtained, it shall be lawful for the plaintiff, upon his own suggestion of that fact, verified by affidavit, without any previous writ, to have a testatum writ of fieri facias directed to the sheriff or coroner of any other county where the defendant may have real or personal estate, which shall be made returnable into the court from which it shall issue." It is then made the duty of the sheriff to whom the testatum writ is directed to deliver it at once to the prothonotary of the Court of Common Pleas of his county, and the prothonotary is thereupon required to enter the same of record, and re-deliver it to the sheriff to be executed. The entry so made is to be a lien, for five years from the date of entry, on all the real estate of the defendant in the county.

Looking, now, at these several provisions, in their relation to each other, to the judgment on which the writ issues, and to the power of the court in which it was obtained to control it as the ends of justice may require, we are led to the conclusion that a testatum fieri facias should issue on the original, and not on the ancillary judgment. The plaintiff, if desirous to reach property of the defendant in another county than that in which his judgment is obtained, has an election whether to proceed by testatum fieri facias, or to transfer his judgment for purposes of execution by filing a copy of the record in such other county. He may take as many copies of his original judgment as he may need, and file them in as many different counties, but he cannot take a copy of record of one of the transferred judgments and make that the basis of a new transfer: Mellon v. Guthrie, 51 Pa. 116 ; and for the same reasons he cannot transfer the lien of such ancillary judgment by a testatum fieri facias. If this could be done, the rule in Mellon v. Guthrie, supra, would not only be rendered useless, and the lien of the ancillary

judgment be extended into the county to which the testatum is issued, but the court would have the control of its process in the county to which it goes, to the entire exclusion of the proper courts of that county. As the judgment on two nihils did not interfere in any manner with the complete control of the courts of Allegheny county over the judgment, it conferred no powers on the courts of Westmoreland which the filing of the copy of record did not give them. As the courts of that county could not send their process into Allegheny county for the collection of this judgment before the revival, they could not do so afterward. If they could, the result would be that the defendant would be deprived of the protection, and the courts of Allegheny county of the control over the judgment and its collection, which the law secures to them. The consequence of the application of these rules is that the issuing of the testatum fieri facias was unauthorized. It must be set aside by the court that issued it. That court has ample power in the premises, and its duty is so plain that we will not doubt its readiness to perform it on application.

What, then, will be the situation? The original judgment remains in, and under the control of the courts of Allegheny county, as fully as at any time since it was obtained. The ancillary judgment, with the judgment of revival, remains in, and under the control of the courts of Westmoreland. If the courts of Allegheny hold that the judgment is paid by the discharge in bankruptcy, the courts of Westmoreland are bound by such holding. If satisfied that the judgment by default should be opened, the courts of Westmoreland should make the proper order, and permit the defendant to be heard upon any valid reason he has to allege why execution should not issue against him. There is thus a clear and an adequate remedy at law for the defendant's protection, and he must resort to it. Upon the facts stated in the bill and answer, the proper course to pursue is obvious. It is not to enjoin the plaintiff against proceeding with his testatum,—a writ wholly unauthorized,—but to send the defendant in the writ to the court that incautiously issued it, to move that it be quashed. The courts of Allegheny county have power to stay the hand of their officer temporarily, to afford the defendant time to make his application in Westmoreland, and should not hesitate to

exercise it. Whether they might not treat it as a nullity, and stay proceedings upon it absolutely, it is not necessary now to determine. The orderly practice is to allow the court that issued the writ to correct its mistake by quashing it, as having been issued without authority.

The effect of the discharge in bankruptcy is not before us in the view we have taken of the case. It was, however, considered by the court below, and has been discussed by counsel. We see no reason to doubt that the defendant's demand is extinguished by operation of the proceedings in bankruptcy, as the question is now presented to us; but as our conclusions are against the plaintiff in this bill, so far as his right to an injunction on the facts presented by it is concerned, we cannot undertake to dispose of that question. We hold that the case presented is not one for equitable relief, but one in which the remedy at law is plain, adequate, and within easy reach, and to it the plaintiff is remitted.

The decree of the court below is reversed, and bill dismissed, at the costs of the appellee.